MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
Assistant United States Attorney

   150 Almaden Blvd., Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   FAX: (408) 535-5066
   E-Mail: Susan.Knight@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 10-00414 RMW |
| ) | |
| Plaintiff, ) | UNITED STATES' OPPOSITION TO |
| ) | DEFENDANT'S MOTION TO DISMISS |
| v. ) | COUNTS ONE THROUGH THREE, NINE |
| ) | AND TEN, AND TWO FORFEITURE |
| EVELYN SINENENG-SMITH, ) | ALLEGATIONS OF THE SUPERSEDING |
| ) | INDICTMENT |
| Defendant. ) | |
| ) | Hearing Date: October 3, 2011 |
| ) | Time: 9:00 a.m. |
| ) | |
| ) | |

**I. INTRODUCTION**

     Defendant Evelyn Sineneng-Smith ("the defendant") has filed a motion to dismiss Counts One through Three, Nine and Ten, and two related forfeiture counts of the superseding indictment. Counts One through Three allege violations of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i), encouraging and inducing illegal immigration for private financial gain, and Counts Nine and Ten allege violations of 18 U.S.C. § 1957, money laundering derived from the specified unlawful activity of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i). The superseding indictment also contains two forfeiture allegations based upon the immigration and money laundering counts.

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW

The defendant moves to dismiss the immigration-related counts on variety of non-constitutional and constitutional grounds, including that the alleged conduct is beyond the scope of 8 U.S.C. §§ 1324(a)(1)(A)(iv); that she lacked fair notice that her work was an immigration consultant would subject her to criminal liability; that the immigration counts are barred by entrapment by estoppel because the United States Department of Labor ("USDOL") and United States Citizenship and Immigration Services ("USCIS") approved hundreds of her petitions; and that her conduct is protected by the Petition and Free Speech Clauses of the First Amendment

For the reasons set forth below, the defendant's motion to dismiss the immigration-related violations should be denied.  The indictment in this case is legally sound, clearly informs the defendant of the charges against her, and correctly alleges the requisite elements of the offense.

## II.  ARGUMENT

A. <u>Legal Standard for a Motion to Dismiss an Indictment</u>.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  It "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).  It is generally enough for the indictment to track the words of the charging statute, "as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling*, 418 U.S. at 117 (internal citation omitted); *see also United States v. Davis*, 336 F.3d 920, 922-23 (9th Cir. 2003).  "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) *quoting United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000).  "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was

convicted." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993).

  B.  <u>The Indictment Charges the Elements of the Offense</u>

  The defendant is charged with three counts of encouraging and inducing illegal immigration for private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i). *See* Attachment A, Superseding Indictment, pp. 1 -3.[1] These immigration counts provide the basis for Counts Nine and Ten, and two forfeiture allegations. *Id*.

  Title 8, United States Code, Section 1324(a)(1)(A)(1)(iv) is one of four separate substantive alien harboring crimes, and provides in pertinent part:

  Any person who–

> (iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law;

shall be punished as provided in subparagraph (B).

  The penalty provision of 8 U.S.C. § 1324(B)(I) states the following:

> A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs–
>
> (I) in the case of a violation of subparagraph (A)(I) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than10 years, or both.

  The seven introductory allegations of Counts One through Three provide a background of the defendant's immigration consultation business, and a brief recitation of immigration law regarding employment-based visas and the Legal Immigration Family Equity Act ("LIFE Act"):

> Under United States immigration law, an alien can obtain an employment-based visa. An employer must first file an application, known as a Form ETA-750, with the United States Department of Labor ("USDOL") seeking to hire the alien. After USDOL approves the form, the employer can apply on the alien's behalf to obtain a visa number and file an application with USCIS called the I-140, Petition for Alien Worker. The petition is signed under penalty of perjury. The Department of State issues a limited number of visas annually, and if a visa for the employment-based visa category is

---

[1] The United States is relying on the Superseding Indictment filed on July 14, 2010 for its factual basis for the opposition to this motion.

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW        3

Case 5:10-cr-00414-RMW   Document 48   Filed 09/12/11   Page 4 of 11


available, an alien can file form I-485, Application to Register Permanent Residence or Adjust Status, to became a lawful permanent resident of the United States. This form is also signed under penalty of perjury.

In 1994, Congress enacted Section 245(I) of the Immigration and Naturalization Act, known as the Legal Immigration Family Equity Act ("LIFE Act"), which permitted certain aliens who were otherwise ineligible for adjustment of status to pay a penalty in order to adjust their status without leaving the United States. The LIFE Act temporarily extended the ability of certain aliens to adjust their status until April 30, 2001. Therefore, in order for an alien to adjust his status under Section 245(I), he must be the beneficiary of a qualifying immigrant visa petition or application for labor certification that was filed on or before April 30, 2001 and meet statutory and regulatory requirements. The LIFE Act was previously limited to eligible aliens who filed applications on or before January 14, 1998.

*Id.* at pp. 1-2.

The indictment then incorporates the introductory allegations and alleges that the defendant, for the purpose of private financial gain, did encourage and induce an alien to reside in the United States, knowing and in reckless disregard of the fact that such residence in the United States was in violation of the law. The indictment lists, in three separate counts, the initials of three aliens ("O.G.," "A.G.," and "H.E."), the dates they entered into retainer agreements with the defendant (June 5, 2005, May 5, 2007, and June 18, 2007 respectively), and their admission numbers listed in Form I-94, which is a record of an alien's arrival into the United States. *See id*. at p. 3.

Furthermore, the defendant was charged with three counts of mail fraud, in violation of 18 U.S.C. § 1341. Counts Four through Six incorporate the factual allegations in paragraphs one through nine, which includes the three immigration counts, and allege that specific mailings for the same aliens listed in the immigration counts. *See id.* at pp. 4-5. Paragraphs ten through fourteen provide additional allegations regarding the defendant's immigration business:

It was part of the scheme and artifice to defraud that Sineneng-Smith counseled foreign nationals, most of whom entered the United States on visitor's visas from the Philippines, to apply for a Department of Labor Foreign Labor Certification in order to work in residential health care facilities.

It was part of the scheme and artifice to defraud that Sineneng-Smith entered into contracts known as "Retainer Agreement For Professional Services" with foreign

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW                                    4

nationals and their employers to file, among other documents, applications for a Foreign Labor Certification with the DOL, and an I-140, Petition for Alien Worker, with CIS. Sineneng-Smith charged approximately $5,900 for the filing of an application for a Foreign Labor Certification with the DOL, and $900.00 for the filing of the I-140 form with CIS.

It was part of the scheme and artifice to defraud that Sineneng-Smith promoted DOL's labor certification program as a way for foreign nationals to obtain a permanent resident employment-based visa, all the while knowing full well that foreign nationals who did not file petitions with DOL or CIS before April 30, 2001 and met certain regulatory and statutory criteria, were not eligible to obtain an employment-based visas. Sineneng-Smith knew that her clients overstayed the amount of time that they were allowed to be in the United States and worked illegally at various heath care facilities.

It was further part of the scheme and artifice to defraud that Sineneng-Smith gave her clients a document, entitled "Prayer for Your Mercy & Leniency" addressed to state and federal government agencies. The document, which contained Sineneng-Smith's signature, stated that the alien who possessed it was applying for a Department of Labor Foreign Labor Certification, and requested the government official exercise his discretion to allow the alien to remain in the United States during the processing of application. The bottom of the letter listed an expiration date.

*Id.* at pp. 3-4.

    C.    <u>The Indictment is Facially Sufficient</u>

Here, Counts One through Three track the statutory language of the immigration offense, 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i). These counts allege all of the following elements of the offense:

1. The defendant encourages or induces;

2. An alien;

3. To reside in the United States;

4. Knowing or in reckless disregard;

5. That such residence was in violation of the law.

6. The offense was done for the purpose of private financial gain.

The statute's language places the defendant on notice of the six essential elements of the offense. The immigration counts allege that the defendant encouraged and induced three aliens, identified by their initials, to reside in the United States by entering into retainer agreements with

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW                    5

1  them.  (At trial, the government anticipates testimony by the aliens that the retainer agreements
2  "encouraged and induced" them to remain in the United States while they waited for their
3  USDOL and USCIS applications to be approved.  The defendant was well aware that the aliens
4  were ineligible to become permanent residents.)

5        The introductory allegations for Counts One through Three describe the defendant's
6  business, and provide a detailed description of the LIFE Act amendments.  The allegations
7  incorporated in Counts Four through Six provide additional information regarding the
8  defendant's interaction with the same aliens alleged in Counts One through Three.  Specifically,
9  the defendant counseled aliens, most of whom had entered the United States on visitor's visas, to
10 apply for a Department of Labor Foreign Labor Certification in order to work in residential
11 health care facilities.  She entered into contracts, known as "Retainer Agreement for Professional
12 Services," with aliens and their employers, to file, among other documents, applications for a
13 Department of Labor Certification with the United States Department of Labor, and an I-140,
14 Petition for Alien Worker, with United States Citizenship and Immigration Services.  The
15 defendant promoted the labor certification program as way for an alien to obtain a permanent
16 resident employment-based visa, *all the while knowing* that aliens who did not file petitions with
17 the Department of Labor and Citizenship Immigration Services before April 30, 2001 were not
18 eligible to obtain employment-based visas.  Furthermore, the defendant gave her clients a
19 document entitled "Prayer for Your Mercy & Leniency," which was addressed to state and
20 federal government agencies.  The letter requested that the government official exercise his
21 discretion to allow the alien to remain in the United States during the processing of the alien's
22 application.  *See id.* at pp. 3-4.

23       Finally, the government has provided the defendant with extensive discovery, including a
24 search warrant affidavit, thousands of pages of client files that were seized from the defendant's
25 business, and work product consisting of ICE's evaluation of over a thousand client files.
26 Therefore, when read in its entirety, the indictment and the discovery provide the defendant with
27 more than sufficient notice of the immigration-related charges against her and the information
28

she needs to prepare for trial.

        D.       <u>The Defendant's Motion Provides No Basis For An Order Dismissing Counts One through Three, Nine and Ten, and The Two Forfeiture Allegations.</u>

        1.   <u>The Government Is Not Expanding The Scope of 8 U.S.C. § 1324(a)(1)(A)(iv).</u>

The defendant claims that the immigration counts should be dismissed because government is expanding the scope of the 8 U.S.C. § 1324(a)(1)(A)(iv) by prosecuting her for simply being hired by aliens to file petitions on their behalf. The defendant's conduct falls squarely within the statute.

First, the government is not alleging that submitting petitions or applications on behalf of unlawfully present aliens is in-and-of itself unlawful. The law allows unlawfully present aliens, and by extension, their attorneys and form preparers, to fill all types of applications for immigration benefits with USCIS, such as applications for asylum, applications for temporary protected status, family-based applications to adjust status if the alien was lawfully admitted but then overstayed. The key issue is that aliens applying for these benefits are *eligible* for these benefits.

Here, the defendant counseled aliens to apply for a USCIS benefit – lawful permanent residence - for which they were *statutorily* ineligible. Counts One through Three allege that the defendant entered into retainer agreements with three aliens on various dates. The retainer agreements had the effect of "encouraging and inducing an alien to reside in the United States." *See* Attachment A, Superseding Indictment at p. 3. At trial, the government anticipates that the three named aliens will testify about the circumstances surrounding the retainer agreements that they entered into with the defendant, and a jury will ultimately decide whether the defendant "encouraged and induced them to reside in the United States, knowing and in reckless disregard of the fact that such residence . . . was in violation of the law." *Id.*

This is not a situation where the defendant operated a day labor site where illegal aliens waited to be hired by employers as in *Garcia v. Dicterow*, 2008 Cal. App. Unpub. LEXIS 9611 (2008). The defendant operated an immigration consultation business for nearly 18 years, and

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW                     7

counseled aliens to apply for employment-based visas in order for them to work in the residential health care industry.  *See id.* at pp. 1-2.  By entering into retainer agreements with her alien clients to apply for USDOL and USCIS benefits for which they were statutorily ineligible, the defendant effectively reassured her alien clients that they could reside in the United States.  *See, e.g., United States v. Ndiaye*, 434 F.3d 1270, 1298 (11th Cir. 1996) (conviction for 8 U.S.C. § 1324(a)(1)(A)(iv) affirmed for approving fraudulent Social Security applications); *United States v. Oloyede*, 982 F.2d 133, 137 (4th Cir. 1993) (conviction for 8 U.S.C. § 1324(a)(1)(A)(iv) affirmed for falsifying immigration documents).  Moreover, she provided further assurances to her clients that they might not be deported if encountered by immigration officials by giving them letters entitled "Prayer for Your Mercy & Leniency."  *See id.* at p.4.

Although the defendant did not make fraudulent statements in the applications submitted to USDOL and USCIS, she entered into retainer agreements with aliens with full knowledge that they were statutorily ineligible to adjust their status to lawful permanent residents.  The retainer agreements were the mechanism by which the defendant encouraged aliens to remain in the United States illegally, and such assistance falls with the statute.  *See United States v. Lopez,* 590 F.3d 1238, 1249-52 (11th Cir. 2009) (finding that district court did not err by giving supplemental jury instruction of the dictionary definition of "encourage" in 8 U.S.C. §1324(a)(1)(A)(iv) trial; "[t]o 'encourage' means to knowing instigate, to incite to action, to give courage to, to inspirit, to embolden, to raise confidence, to help, to forward, and/or to advise.").

2. <u>The Immigration Counts Do Not Violate The Defendant's Due Process Rights.</u>

The defendant alleges that the immigration counts must be dismissed because they are based on a novel construction of law, there is no case supporting the alleged conduct against her, and she lacked fair notice that her conduct was criminal because the government approved numerous USDOL and USCIS applications.

First, the facts in the this case fit under the elements of Title 8, United States Code, Section 1324(a)(1)(A)(iv), and the defendant, in her brief, recounts numerous cases of individuals being prosecuted for encouraging and inducing illegal immigration in a variety of

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW                                            8

contexts. *See* Def. Mot. at 8-9, 15.

Second, the defendant did not lack fair notice that her conduct of encouraging aliens who were statutorily eligible to apply for employment-based visas was illegal. Although the USDOL and USCIS approved hundreds of her applications, including applications green cards, the defendant did not act with a good faith belief that her alien clients were statutorily eligible for the benefit that she promoted. Immigration procedures are complex, and a foreign labor certification and USCIS Form I-140 are prerequisites to the filing of an I-485, Application to Register Permanent Residence or Adjust Status. *See* Attachment A, Superseding Indictment at p. 2. Evidence at trial will demonstrate the that the defendant was aware of the immigration procedures, cut off date of April 30, 2001, and continued to enter into retainer agreements with aliens.

    3. "Entrapment by Estoppel" Is A Defense To Be Raised At Trial And Does Not Result In The Dismissal Of The Immigration Counts.

The defendant next claims that the immigration counts are barred by "entrapment by estoppel" because the USDOL and USCIS approved hundreds of applications before and after agents from Immigration and Customs Enforcement executed a search warrant on her business in April 2008. She asserts that such approvals amount to "sufficient affirmative statements" by those government agencies that her conduct was lawful. *See* Def. Mot. at 19. Therefore, the government should be barred from prosecuting her for immigration offenses.

A defendant may assert the defense at trial of "entrapment by estoppel" when "an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987). The defendant must show "that the government affirmatively told him that the proscribed conduct was permissible, and that he reasonably relied on the government's statement." *United States v. Hancock*, 231 F.3d 557, 567 (9th Cir. 2000) *quoting United States v. Ramirez-Valencia*, 202 F.3d 1006, 1109 (9th Cir. 2000). "It is not sufficient that the government official's comments were vague or even contradictory." *Hancock*, 231 F.3d at 567.

U.S. OPPOSITION TO MOTION TO DISMISS
CR 10-00414 RMW                                       9

The defendant's "entrapment by estoppel" claim should be raised as a jury instruction rather than a motion to dismiss the immigration counts in the Indictment. Nevertheless, the defendant maybe entitled to such an instruction at trial.

As previously discussed, this case is about the defendant counseling aliens to apply for a foreign labor certification as a way to obtain permanent residence status, all the while knowing that aliens who filed such applications after April 30, 2001 were *statutorily ineligible* to obtain such a benefit. *See* Attachment A, Superseding Indictment at pp. 2, 4.

The foreign labor application filed with USDOL was a notification that an employer was seeking to hire an alien. *See id.* at p. 2. The Form I-140 filed with USCIS, which is filed after USDOL grants a labor certification, established a relationship with the employer and alien. *See id.* It is only after an employment-based visa is available, that an alien can file the Form I-485, Application to Register Permanent Residence, to become a lawful permanent resident. *See id.* Layered on top of the application process was the requirement that an alien must have filed such applications with USDOL or USCIS before April 30, 2001 to obtain the immigration benefit of lawful permanent residence. *See id.*

The defendant filed hundreds of applications for foreign labor certifications with the United States Department of Labor and I-140 forms with United States Citizenship Immigration Services. For purposes of this motion, the government does not dispute the defendant's claim that she obtained 819 total USDOL approved labor certifications with 295 approvals filed after April 30, 2001; 175 total USCIS approvals for I-140 applications, and 146 total USCIS approvals for I-485 applications resulting in green cards. *See* Def. Mot. at 6. Nevertheless, USDOL and USCIS approved some of her applications and denied some of her applications. She did not receive one hundred percent approval of all the applications she submitted. Therefore, at the very least, the defendant received contradictory statements from USDOL and USCIS regarding the filing of foreign labor applications and I-140 forms. *Hancock*, 231 F.3d at 567. The government anticipates further discussing the "entrapment by estoppel" instruction after the Court's ruling on the instant motion and if the case proceeds to trial.

4. <u>The Charged Conduct Does Not Violate The Defendant's First Amendment Rights.</u>

Finally, the defendant claims that the immigration counts as charged are protected by the Free Speech and Petition Clauses of the First Amendment. The government does not dispute that the defendant can counsel aliens about the various paths to citizenship and file petitions with USDOL and USCIS for benefits. However, the main issue in this case is whether the retainer agreements that the defendant entered into with her alien clients "encouraged and induced" them to remain in the United States, and is for a jury to decide.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss Counts One through Three, Nine and Ten, and two forfeiture allegations of the Indictment.

DATED: 9/12/11                              Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                            _____/s/_____
                                            SUSAN KNIGHT
                                            Assistant United States Attorney