**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EVELYN SINENENG-SMITH,<br><br>Defendant. | Case No. CR-10-00414-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT EVELYN SINENENG-SMITH'S MOTION FOR ACQUITTAL AND DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>**[Re: Docket Nos. 213, 214]** |

Defendant Evelyn Sineneng-Smith moves for a judgment of acquittal and a new trial with respect to three counts of violating § 1324(a)(1)(A)(iv) and (b)(i), and three counts of mail fraud. Dkt. Nos. 213, 214. For the reasons explained below, the court grants the motion for judgment of acquittal as to Counts One and Four, and denies the motion for judgment of acquittal as to Counts Two, Three, Five, and Six. The court conditionally grants the motion for a new trial as to Counts One and Four, and denies the motion for a new trial as to Counts Two, Three, Five, and Six.

## I. BACKGROUND

From approximately 1990 to April 2008, defendant Evelyn Sineneng-Smith owned and operated an immigration consultation business located in San Jose, California, with additional offices in Beverly Hills, California, La Jolla, California, Las Vegas, Nevada, and New York, New

York. Sineneng-Smith counseled foreign nationals on applying for and obtaining employment based visas in order to enable them to work in the residential health care industry. An alien can obtain an employment-based visa under United States immigration law from the Department of State by filing form I-485, Application to Register Permanent Residence or Adjust Status. Certain aliens are ineligible for adjustment of status. However, in 1994, Congress enacted Section 245(i) of the Immigration and Naturalization Act, known as the Legal Immigration Family Equity Act ("LIFE Act"), which permitted certain aliens who were otherwise ineligible for adjustment of status to pay a penalty in order to adjust their status without leaving the United States if the alien was the beneficiary of a qualifying immigrant visa petition or application for labor certification and met statutory and regulatory requirements before April 30, 2001. The relevant labor certification application, known as Form ETA-750, is filed with the United States Department of Labor ("USDOL") by the employer seeking to hire the alien. If the USDOL approves the form, an employer can apply on the alien's behalf to obtain a visa number and file an application with the United States Citizenship and Immigration Services ("USCIS") called the I-140, Petition for Alien Worker.

Counts one through three each allege that for the purpose of private financial gain, Sineneng-Smith encouraged or induced an alien to reside in the United States, knowing or in reckless disregard of the fact that such residence was in violation of the law. The indictment lists the initials of each alien, the date he or she entered into a retainer agreement with the defendant, and the admission number listed in Form I-94, the record of the alien's arrival into the United States. These aliens have since been revealed to be Oliver Galupo (Counts One and Four), Amelia Guillermo (Counts Two and Five), and Hermansita Esteban (Counts Three and Six).

The defendant is also charged with three counts of mail fraud. In support of those allegations, the superseding indictment alleges that Sineneng-Smith entered into retainer agreements with foreign nationals, most of whom entered the United States on visitor's visas from the Philippines, and their employers. The superseding indictment alleges that Sineneng-Smith fraudulently promoted USDOL's labor certification program as a way for foreign nationals to obtain a permanent resident employment-based visa, while knowing that foreign nationals who did not file

petitions with USDOL or USCIS prior to April 30, 2001 would not be eligible to obtain employment-based visas. She charged $5,900 for the filing of an application for a foreign labor certification with USDOL and $900 for the filing of the I-140 Form with USCIS–filings that she allegedly knew were futile. Sineneng-Smith also allegedly knew that her clients had overstayed the amount of time they were allowed to be in the United States and worked illegally at various health care facilities.

On July 30, 2013, after a twelve-day trial, a jury convicted Sineneng-Smith on all six counts. Dkt. No. 195. Sineneng-Smith now moves the court for a judgment of acquittal and, in the alternative, for a new trial on all six counts.

## II. ANALYSIS

Federal Rule of Criminal Procedure 29(c) permits a court to "set aside the verdict and enter an acquittal" if the jury has returned a guilty verdict or "[i]f the jury has failed to return a verdict." Fed. R. Crim. P. 29(c)(2). "In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal quotation marks omitted). The court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (internal quotation marks omitted); *see also Alarcon-Simi*, 300 F.3d at 1176.

As for the new trial motion, Federal Rule of Criminal Procedure 33 permits the court, on defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court's power to grant a new trial is broader than its power to grant a motion for judgment of acquittal because the court "is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). However, the court's discretion is not unconstrained. The court may only grant a new trial if it finds that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of

justice may have occurred." *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### A. Sufficiency of the Evidence on the Immigration Charges

To prove that Sineneng-Smith was guilty under § 1324(a)(1)(A)(iv) and (b)(i), the government had to show beyond a reasonable doubt that (1) the person identified in the count was an alien; (2) Sineneng-Smith encouraged or induced the alien to reside in the United States in violation of the law; (3) Sineneng-Smith knew that the alien's residence in the United States was or would be in violation of the law; and (4) Sineneng-Smith did so for private financial gain. The parties agree that a violation of § 1324(a)(1)(A)(iv) is not a continuing offense. Therefore, the government must prove that the offense was completed on the charged date. However, as the court ruled in considering the defendant's motions in limine, "[e]vidence of defendant's continued encouragement or inducement of the specific clients charged in the counts is relevant if it tends to prove acts consistent with the alleged inducement or encouragement such as showing that the inducement or encouragement was carried out." Dkt. No. 131, at 5.

The defendant did not dispute that Guillermo, Esteban, and Galupo are aliens. The government introduced evidence proving this element as to all three alleged victims. RT: 686:16-17; 688:5-6; Gov't Exh. 13B; Gov't Exh. 14 (as to Guillermo); RT: Vol. 6, 4:19-20; 6:5-8; Gov't Exh. 17B (as to Esteban); Gov't Exh. 10 (as to Galupo).

It is also undisputed that Sineneng-Smith knew that Guillermo's, Esteban's, and Galupo's residences in the United States were in violation of the law. Sineneng-Smith knew of her clients' immigration status because she routinely examined her clients' passports and visas and made copies for her files. RT: 1019:2-6. The defendant also admitted to ICE Special Agent Anthony Villacorta that she knew that "most of [her clients] were here illegally." *Id.* at 1018:24-1019:1. Therefore, the government presented sufficient evidence from which a reasonable jury could have found the first and third elements of the immigration charges proven beyond a reasonable doubt.

Finally, there is no dispute that Sineneng-Smith committed the immigration offenses for private financial gain. The government introduced checks to the defendant written on behalf of Galupo, Gov't Exh. 11, Esteban, Gov't Exh. 19, and Guillermo, Gov't Exh. 15. Esteban and

Guillermo both testified that they paid Sineneng-Smith for their retainer agreements. RT: Vol. 6, 19:18-23; 30:9-10 (Esteban); RT: 701:12-24; 715:19-24 (Guillermo).

### 1. Count Two: "Encouragement" as to Guillermo

The defendant argues that the government presented insufficient evidence for a reasonable jury to find beyond a reasonable doubt that Sineneng-Smith encouraged or induced Guillermo to reside in the United States in violation of the law. The government in response directs the court to several excerpts of Guillermo's testimony at trial. In particular, Guillermo testified that she met with the defendant, the defendant's staff member, and Guillermo's employer, Marilyn Santiago, on April 10, 2002. RT: 693:11-24. At that meeting, Guillermo signed a retainer agreement for Sineneng-Smith to guide her through the labor certification process, paying Sineneng-Smith $200 per month plus a $500 down payment for a total of $5,900. *Id*. at 701:3-5; 12-15; 23-24. Guillermo testified that she then asked the defendant's staff member—apparently while Sineneng-Smith was present—whether she could work, and the staff member replied "that's why you are here." *Id*. at 704:9-12. Shortly after Guillermo's meeting with the defendant, she began working for Santiago. *Id*. at 705:14-18.

Guillermo testified that five years later, Santiago informed her that her labor certification was approved. RT: 713:22-24. Sineneng-Smith mailed her a retainer for a Petition for Alien Worker (I-140), which Guillermo signed on May 5, 2007, the charged date. *Id*. at 714:14-23; 715:25-716:3. This retainer agreement cost Guillermo $1,000, and she paid $300 down. *Id*. at 715:12-24. Santiago signed the agreement on June 20, 2007, and Guillermo mailed the retainer back to Sineneng-Smith. *Id*. at 716:12-16; 720:16-20. The government introduced several of Guillermo's retainer agreements with Sineneng-Smith into evidence. Gov't Exh. 13A at 346-47; Gov't Exh. 13D; Gov't Exh. 13F. Along with the retainer agreement for the Petition for Alien Worker, the government introduced a document from Sineneng-Smith advising Guillermo on a premium processing service for the Petition for Alien Worker. Gov't Exh. 13F at 182-83. This document mentions the possibility of Guillermo receiving a work permit and green card, and the accompanying chart states that the "Next Step if result is Approval" is to "Apply for Work Permit/Green Card." *Id*.

From this evidence, a reasonable jury could have found beyond a reasonable doubt that Sineneng-Smith encouraged Guillermo to reside illegally in the United States on May 5, 2007. This court previously held in denying the defendant's motion to dismiss that Sineneng-Smith could "encourage" within the meaning of § 1324(a)(1)(A)(iv) "[b]y suggesting to the aliens that the applications she would make on their behalf, in exchange for their payments, would allow them to eventually obtain legal permanent residency in the United States." Dkt. No. 51, at 4-5. The jury could have concluded that Sineneng-Smith suggested to Guillermo that, by proceeding with the retainer agreements and various applications, Guillermo would eventually be able to obtain legal status. While the defendant was present, her employee told Guillermo that the purpose of the meeting was to allow Guillermo to work in the United States. The defendant had Guillermo sign and pay for retainer agreements that would purportedly help Guillermo achieve legal status, when in fact legal status was impossible.

The evidence at trial was sufficient for a reasonable jury to find that through advertisements in Filipino newspapers and flyers at residential healthcare facilities, Sineneng-Smith attracted individuals she knew were working illegally in the United States, promising them that a successful labor certification and I-140 petition would allow them to obtain legal permanent residency, all the while knowing that without a change in the law, many of her clients were not allowed to work even after the labor certification and I-140 were approved. RT: 1018:9-11; 16-18; 1019:19-21; 1020:1-5; 13-18; 1022:9-17. This evidence could have provided the jury with context for Sineneng-Smith's specific meeting with Guillermo, lending credibility to Guillermo's testimony on her perception of the meeting's purpose. This evidence also could have provided context for Sineneng-Smith's employee's "that's why you are here" statement, allowing a reasonable jury to find beyond a reasonable doubt that Sineneng-Smith "encouraged" Guillermo to reside illegally within the United States on the day Guillermo signed the Petition for Alien Worker, as prohibited by § 1324(a)(1)(A)(iv).

Sineneng-Smith argues that she never met with Guillermo or talked to her about the Petition for Alien Worker. The defendant contends that she merely filed paperwork for Guillermo. But the jury could have reasonably concluded otherwise. Sineneng-Smith did meet with Guillermo with

respect to the labor certification, and the documents surrounding the Petition for Alien Worker indicate that Sineneng-Smith held out her services as a vehicle to obtain a legal work permit and green card. The evidence shows an ongoing relationship between Guillermo and the defendant, and Guillermo testified repeatedly that she "trusted Evelyn Sineneng-Smith," even though Sineneng-Smith was not providing Guillermo with legal advice. RT: 720:1-9. A reasonable jury could have found beyond a reasonable doubt that the retainer agreements, meetings, and other documents exchanged by Sineneng-Smith and Guillermo rose to the level of the defendant "encouraging" Guillermo to reside illegally in the United States.

Sineneng-Smith also argues, with respect to Counts Two and Three, that the retainer agreements were not signed until after the charged date, meaning that they were not in legal effect on the charged date. But this fact is irrelevant. The government's allegations are not based on the legal relationship between the defendant and her clients. In fact, as the defendant repeatedly asserts, the legal relationship was relatively circumscribed. Instead, the government alleges that Sineneng-Smith encouraged her clients to reside illegally in the United States by suggesting to them that the applications she would make on their behalf would allow them to eventually obtain legal permanent residency in the United States. In other words, the government's proof of encouragement is based on the impression Sineneng-Smith fostered in her clients that they would be able to obtain a green card through her services. Having her clients sign a retainer agreement was the mechanism of the defendant's encouragement, but the retainer agreement having immediate legal effect was unnecessary for encouragement to have occurred.

### 2. Count Three: "Encouragement" as to Esteban

Esteban's testimony at trial tells a similar story to Guillermo's. Esteban testified that she met with Sineneng-Smith on May 13, 2002. RT: Vol. 6 at 8:17-22. At that meeting, Esteban signed a retainer agreement, which the government admitted into evidence. Gov't Exh. 17A at 245-46. Like Guillermo, Esteban paid the defendant a $5,900 retainer fee. RT: Vol. 6 at 19:23. Esteban testified that during the May 13, 2002 meeting, Sineneng-Smith told her that she "was able to work once the [labor certification] was filed." *Id*. at 11:10-13. Esteban also testified that, with respect to Esteban's ability to remain in the United States, Sineneng-Smith advised her that "[she] was here in the U.S.

and that [she] could stay here in the U.S." *Id*. at 11:14-24. It was Esteban's understanding that at the end of the process, she "would receive a green card." *Id*. at 11:25-12:2.

Esteban testified that after the May 13, 2002 meeting, she began to work at Soquel Leisure Villa. RT: Vol. 6 at 23:4-5. Esteban did not attempt to extend her visa, which expired on October 12, 2002, because she "thought that [she] had a petition that had been filed and that that was [her] way of being legalized." *Id*. at 23:7-13. Later, Esteban testified that she received a letter notifying her that her labor certification application had been approved. *Id*. at 29:3-5. Sineneng-Smith then sent Esteban a retainer agreement for immigrant petition, which Esteban signed. *Id*. at 29:11-30:1. As with Guillermo, Esteban paid $1,000 for this retainer agreement. RT: Vol. 6 at 29:17-23. Esteban testified that she gave the second retainer agreement, dated June 18, 2007—the charged date—to her employer to mail to Sineneng-Smith. The government introduced this retainer agreement, along with several related documents, into evidence. Gov't Exh. 17E.

The evidence as to Esteban is stronger than the evidence as to Guillermo. The jury could reasonably believe Esteban's testimony that the defendant personally represented to her that she could stay in the United States and work while her labor certification was pending. It is uncontested that Sineneng-Smith knew that Esteban's continued residence in the United States was illegal. Thus, based on Esteban's testimony, a reasonable jury could find beyond a reasonable doubt that Sineneng-Smith encouraged Esteban to remain in the United States on the charged date by promising to help her obtain legal status.

### 3. Count One: "Encouragement" as to Galupo

The court finds the evidence presented at trial insufficient as to Galupo. Unlike Esteban or Guillermo, Galupo did not testify at trial, nor did his employer. The only evidence presented by the government at trial connecting Galupo and Sineneng-Smith was the retainer agreement for the defendant's services signed by Galupo. The government argues that the "jury could infer from reviewing Galupo's June 2, 2005 retainer agreement that the defendant also encouraged him to reside in the United States." Gov. Opp. at 6-7. In doing so, the government wishes to criminalize the signing of a retainer agreement with an illegal resident in the United States for the filing of a labor certification on the alien's behalf. This simple act, as the defendant argues, is certainly not a

violation of § 1324(a)(1)(A)(iv). Rather, as the court ruled in denying Sineneng-Smith's motion to dismiss, encouragement under the statute requires "suggesting to the aliens that the applications [Sineneng-Smith] would make on their behalf, in exchange for their payments, would allow them to eventually obtain legal permanent residency in the United States." Dkt. No. 51, at 4-5. Therefore, to present sufficient evidence of encouragement, the government must demonstrate that Sineneng-Smith suggested to Galupo that the applications she would make on his behalf would potentially lead to legal permanent residency in the United States.

However, the government has introduced no evidence that Sineneng-Smith made any representations to Galupo that her services could allow him to obtain legal permanent residency in the United States. The government presented no testimony concerning statements made by Sineneng-Smith to Galupo, nor did it introduce any documentary evidence to that effect. Moreover, the retainer agreement between Galupo and Sineneng-Smith by itself is insufficient—on its face, it merely states that Sineneng-Smith will assist Galupo in attaining a labor certification. The retainer agreement does not promise that the labor certification can lead to legal permanent residency for Galupo.

Although the circumstances surrounding the signing of Galupo's retainer agreement appear similar to those of Guillermo and Esteban, the court—and a reasonable jury—must examine the evidence as to each count separately. If the court were to allow the jury to infer solely from the retainer agreement that Galupo had an experience with Sineneng-Smith similar to Guillermo's and Esteban's, it would allow the jury to convict Sineneng-Smith on Count One based solely on other crimes she committed. From the government's presentation of a few otherwise neutral documents from Galupo's file that are similar to documents found in Guillermo's and Esteban's files, the government wished the jury to infer that the representations the defendant made to Guillermo and Esteban also were made to Galupo. This sort of inference is prohibited by Fed. R. Ev. 404(b)(1). And without any evidence that Sineneng-Smith made any representations at all regarding Galupo's ability to obtain legal permanent residency, no reasonable jury could find beyond a reasonable doubt that Sineneng-Smith encouraged Galupo to reside illegally in the United States.

The government contends that the jury could have found that once Galupo signed the retainer agreement with Sineneng-Smith, he had to remain in the United States so he could work to pay her. This argument suggests that any person who lends an alien money could be guilty of violating § 1324(a)(1)(A)(iv). Another court has held, and the Third Circuit has affirmed, that an employer does not encourage an alien within the meaning of § 1324(a)(1)(A)(iv) by hiring an undocumented worker. *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 308 (D.N.J. 2005) *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012). If actually hiring an alien to work does not constitute "encouragement," it is certainly not "encouragement" to make an agreement with an alien that, under the circumstances, requires him to work to pay money owed under the agreement. Even further, nothing about simply owing the defendant money required Galupo to live and work in the United States. Galupo could have sent Sineneng-Smith the money from the Philippines. He could have obtained the money from a generous relative. The government's argument here fails.

### 4. Summary: Immigration Charges

In sum, the evidence presented at trial was sufficient as to Counts Two (Guillermo) and Three (Esteban), and insufficient as to the encouragement element of Count One (Galupo). Sineneng-Smith argues, as she did in her motion to dismiss earlier in this case, Dkt. No. 46, that her conduct cannot fall within the scope of § 1324(a)(1)(A)(iv), and that interpreting § 1324(a)(1)(A)(iv) to prohibit the conduct of which defendant is accused would cause it to be unconstitutionally vague. But for the reasons stated above and in the court's denial of her motion to dismiss, Dkt. No. 51 at 4-6, the court finds that the conduct proven as to Counts Two and Three constitutes "encouragement" under § 1324(a)(1)(A)(iv), [1] and that this interpretation of

---

[1] Sineneng-Smith makes the same arguments as before. However, the court will address one argument in particular, as the government further refuted it with evidence presented at trial. Sineneng-Smith contends that she must be acquitted because there can be legitimate reasons for someone to file a labor certification or petition for alien worker. The defendant relies on USCIS Associate Center Director Kurt Gooselaw's grand jury testimony that individuals have a right to file foreign labor certifications and I-140s, and that thousands of foreign labor certifications and I-140s for aliens unlawfully present in the United States have been approved. But the government sufficiently responded to this argument with Mr. Gooselaw's trial testimony. Mr. Gooselaw testified that an alien with an approved labor certification and I-140, who is ineligible for § 245(i) and residing in the United States, is creating an "unlawful presence." RT: 244:4-11. "That means if they

§ 1324(a)(1)(A)(iv) does not render it unconstitutionally vague or deny Sineneng-Smith fair notice. Therefore, the court grants the defendant's motion for judgment of acquittal as to Count One, and denies it as to Counts Two and Three. Upon a similar review of the evidence, but without construing the evidence in the light most favorable to the government, the court finds that failing to grant a new trial on Counts Two and Three would not result in "a serious miscarriage of justice," *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000), so the court accordingly denies Sineneng-Smith's motion for a new trial as to Counts Two and Three. As to Count One, the court conditionally grants Sineneng-Smith's motion for a new trial.

### B. Sufficiency of the Evidence on the Mail Fraud Charges

To prove that Sineneng-Smith committed mail fraud, the government had to show beyond a reasonable doubt that: (1) Sineneng-Smith knowingly devised and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; (3) Sineneng-Smith acted with the intent to defraud; and (4) Sineneng-Smith used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme. Sineneng-Smith in her motions for judgment of acquittal and new trial only contests the first two elements.

The defendant does not dispute that if a scheme to defraud is found, the mails were used to carry out an essential part of the scheme. As to Count Four, ICE Special Agent Wendell Wright testified that he discovered a letter dated December 2, 2005 from the defendant transmitting a Department of Labor Application for Permanent Employment Certification for Galupo that was mailed from San Jose, CA to Chicago, IL. RT: 1162:11-1163:3; *see* Gov't Exh. 9E. Special Agent Wright found a U.S. Postal certified mail receipt with the document. *Id.* at 1163:4-7. As to Count Five, Special Agent Wright testified that he found a letter, dated July 12, 2007, signed by Sineneng-

---

accrue more than 180 days in less than a year they could be barred from the United States if they depart. And more than one year unlawful presence, they depart the United States, they could be barred for ten years." *Id.* at 244:13-16. Therefore, Sineneng-Smith did not file for labor certifications and I-140s for legitimate reasons, but rather that the defendant harmed her clients by worsening their immigration status.

ORDER RE ACQUITTAL AND NEW TRIAL
Case No. CR-10-00414-RMW
RDS
- 11 -

Smith, and accompanying the I-140 Form for Guillermo, that was mailed from San Jose, CA to Lincoln, NE. *Id*. at 1167:16-1168:14; *see* Gov't Exh. 13H. Special Agent Wright found a U.S. Postal certified mail receipt with these documents as well. *Id*. at 1168:15-18. As to Count Six, Esteban testified that she received a leniency letter dated October 22, 2007 in the mail from Sineneng-Smith. RT: Vol. 6 27:17-28:6.

Sineneng-Smith also does not appear to dispute that if a scheme to defraud is found, a reasonable jury could have concluded beyond a reasonable doubt that she acted with intent to defraud. The government presented sufficient evidence as to this element. ICE Special Agent Anthony Villacorta testified that Sineneng-Smith admitted to him that she knew that her clients could not obtain legal permanent residency through labor certification, that she knew how the § 245(i) legislation operated, and that her clients could not work even after the labor certification and petition for immigrant worker were approved. RT: 1020:1-18; 1022:9-14. According to Special Agent Villacorta's testimony, Sineneng-Smith explained to him the proper procedure for her clients to be able to legally adjust their immigration status, which required them to wait in their home country until they were approved for a work visa to enter the United States. *Id*. at 1022:17-1023:8. Sineneng-Smith knew that she was not following the proper procedure with her clients. *Id*. at 1023:5-8. The government also presented evidence that Sineneng-Smith, through advertisements in Filipino newspapers and flyers at residential healthcare facilities, attracted clients she knew were working illegally in the United States. *Id*. at 1018:9-11; 16-18; 1019:19-21. From all of this evidence, the jury could have reasonably concluded beyond a reasonable doubt that Sineneng-Smith acted with intent to defraud.

### 1. A Scheme or Plan to Defraud

"Proof of an affirmative, material misrepresentation supports a conviction of mail fraud" without any additional proof of a fiduciary duty to the victim. *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986). However, "[a] defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved." *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981) (citing *United States v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980); *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967); *Lemon v. United States*, 278 F.2d 369,

373 (9th Cir. 1960)). In addition, "deceitful statements of half truths or the concealment of material facts is actual fraud violative of the mail fraud statute. . . . [T]he deception need not be premised upon verbalized words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance." *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (citing *Lustiger*, 386 F.2d at 138). Note also that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States,* 527 U.S. 1, 25 (1999).

The government alleges that Sineneng-Smith misled Guillermo, Esteban, and Galupo into believing that they could achieve legal permanent residency via the defendant's services. The relevant inquiry, then, is whether, as to each alleged victim, the government presented sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that Sineneng-Smith engaged in a scheme to defraud by creating the false impression that her client could achieve legal permanent residency. The government must also have introduced sufficient evidence from which a jury could conclude that the falsehood was material. The court finds that the government upheld its burden with respect to Count Five (Guillermo) and Count Six (Esteban), but not as to Count Four (Galupo). Sineneng-Smith's motion for judgment of acquittal is therefore denied as to Counts Five and Six and granted as to Count Four.

### 2. Count Five: Scheme to Defraud as to Guillermo

The relevant facts for the mail fraud charge are similar to the facts for the immigration charge. Guillermo testified that she met Sineneng-Smith on April 10, 2002. RT: 693:11-24. There, Guillermo sat at a table with Santiago (her employer), the defendant, and the defendant's staff member. *Id*. At the meeting, Guillermo signed a retainer agreement for Sineneng-Smith to assist her in "obtain[ing] permanent residence through Labor Certification." Gov't Exh. 13A at 346-47. Guillermo testified that she asked the defendant's staff member whether she could work, and the staff member replied "that's why you are here." RT: 704:9-12.

Guillermo testified that she began working for Santiago about a month after the meeting, on May 5, 2002. RT: 705:14-18. Guillermo also testified that she received a number of leniency letters from Sineneng-Smith. *Id*. at 706:16-25. The letters indicated that Guillermo was "taking steps to

legalize his/her immigration status in the United States," and they were addressed to various state and federal agencies. Gov't Exh. 13C. Eventually, Santiago told Guillermo that her labor certification had been approved. RT: 713:22-24. Shortly thereafter, Sineneng-Smith sent Guillermo a retainer for an I-140, which Guillermo signed. *Id*. at 714:14-23; 715:25-716:3. Guillermo testified that she also paid a $300 down payment on the retainer agreement's $1,000 total cost. *Id*. at 715:12-24. As described in the section on Count Two, Guillermo testified that she signed a document on "premium processing." Gov't Exh. 13F at 182-83. This document mentions the possibility of Guillermo receiving a work permit and green card, and the accompanying chart states that the "Next Step if result is Approval" is to "Apply for Work Permit/Green Card." *Id*.

Sineneng-Smith, contending that the evidence only reveals material omissions, argues that "a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged." *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985). But the evidence introduced at trial establishes that the defendant's statements to Guillermo are better characterized as half-truths, or even as being affirmatively misleading. Various different documents suggested that Guillermo could obtain a green card, and the defendant's staff member indicated to Guillermo that following Sineneng-Smith's advice would allow Guillermo to legally work in the United States. A jury could have reasonably concluded from the evidence that Sineneng-Smith intentionally led Guillermo to believe that Guillermo could obtain legal permanent residency.

Finally, the government presented unequivocal evidence of materiality. Guillermo testified that if the defendant told her that she could not obtain a green card, she would have gone home. RT: 796:17-19. Guillermo reasonably relied on Sineneng-Smith's representations that Guillermo could obtain a green card. The evidence introduced at trial was sufficient as to Count Five.

### 3. Count Six: Scheme to Defraud as to Esteban

As Esteban's testimony was detailed in the section on Count Three, and the testimony was largely similar to Guillermo's, the court will only highlight a few key facts. Esteban testified that when she met with Sineneng-Smith, the defendant told her "to trust her because she studied law, and that her office was trustworthy, and that there were many people whose petitions had been

ORDER RE ACQUITTAL AND NEW TRIAL
Case No. CR-10-00414-RMW RDS
- 14 -

approved." RT: Vol. 6, 10:11-16. Esteban believed that at the end of the process, she "would receive a green card." *Id*. at 11:25-12:2. Esteban signed a retainer agreement with similar language to the one Guillermo signed. The agreement stated that "Evelyn Sineneng-Smith, has been retained by me Hermansita Esteban (alien) for the purposes of assisting me (alien), to obtain permanent residence through Labor Certification." Gov't Exh. 17A at 245-46. Esteban testified that after the meeting, she was under the impression that her petition "was [her] way of being legalized." RT: Vol. 6, 23:7-13. As a result, Esteban did not extend her visa. *Id*.

Esteban testified that, like Guillermo, she received leniency letters "almost every month." RT: Vol 6, 25:19-20; Gov't Exh. 17C. The leniency letters stated that "[t]his alien is taking steps to legalize his/her immigration status in the United States," again indicating to Esteban that she was going through the process to achieve legal permanent residency. Gov't Exh. 17C. The government also admitted status letters sent by Sineneng-Smith to Esteban. These letters told Esteban to "[p]lease be patient and cooperate with us so that we will be successful in obtaining your permanent residency in the United States." Gov't Exh. 17C. Esteban later signed a retainer agreement for Sineneng-Smith to assist her in filing a Petition for Alien Worker. Gov't Exh. 17E at 42-43.

The record is replete with explicit misrepresentations made to Esteban. A reasonable jury could have found beyond a reasonable doubt that Sineneng-Smith's repeated allusions to Esteban attaining legal status or permanent residency fraudulently misled Esteban into believing that she could obtain a green card, when in fact it was impossible. Esteban's testimony demonstrates that Esteban assumed she was taking the proper steps to achieve legal permanent residency, and that Sineneng-Smith's actions were instrumental in forming this belief. Unlike the defendant contends, this count is not based purely on an omission. Rather, Sineneng-Smith's affirmative statements to Esteban in person and through retainer agreements and letters misled Esteban.

As to materiality, although the government does not point to an express statement from Esteban that she would not have reasonably retained Sineneng-Smith had Esteban known that she was ineligible for a green card, the jury could reasonably infer materiality beyond a reasonable doubt based on all of Esteban's testimony detailing her belief that she could work and reside in the

United States while proceeding to obtain a green card. The court therefore denies the defendant's motions with respect to Count Six.

### 4. Count Four: Scheme to Defraud as to Galupo

As mentioned in the section on Count One, Galupo did not testify at trial. The government directs the court to two documents introduced at trial to support the jury's verdict: Galupo's retainer agreement, Gov't Exh. 9 at 189-91, and a chart entitled "The Road to Obtaining Permanent Residence is a Rocky and Frustrating Road," Gov't Exh. 9 at 195. Because the government cannot demonstrate that Sineneng-Smith engaged in a scheme to defraud Galupo, the court grants the defendant's motion for judgment of acquittal as to Count Four.

The government highlights the first line of Galupo's retainer agreement, which reads "This will acknowledge that Evelyn Sineneng-Smith has been retained by me Oliver Galupo (alien worker) for purposes of assisting me to obtain my Labor Certification thru PERM." Nothing about this statement is misleading. It does not suggest that Galupo will receive legal status or a green card. Not only is it apparently true that Galupo retained Sineneng-Smith, but the government does not contend that Galupo could not have obtained a labor certification.

The government also points to an addendum to the retainer agreement: "As of today, 245i was not renewed, but Congress may reintroduce 245i during their next session." The government argues that a "jury could find that the statement is misleading because it does not provide an explanation of what 245(i) [sic] and speculates that Congress may take action." Dkt. No. 218 at 15-16. If anything, this addendum is more consistent with full disclosure than with misrepresentation. In adding this language, Sineneng-Smith made only truthful statements. These truthful statements disclosed the current state of the law to Galupo. Because there is no evidence as to what either Sineneng-Smith or Galupo said at the time the retainer agreement was signed, there is insufficient evidence from which a reasonable jury could find that the defendant should have explained what § 245(i) is or that she should have told Galupo that he was ineligible for a green card. In fact, because there is a lack of evidence, it is reasonable to conclude that Sineneng-Smith may have told Galupo that, without a change in the law, he could not obtain a green card. No reasonable jury could

conclude beyond a reasonable doubt from the retainer agreement that Sineneng-Smith misled Galupo.

The analysis as to the "Rocky and Frustrating Road" chart is similar. This chart indicates that attaining a work permit and green card may be possible, but that it is a difficult and "frustrating" process. Gov't Exh. 9 at 195. Under the portion of the chart mentioning a work permit and green card, a note reads "If applicable, 245i effective here." Again, because the government presented no evidence of the discussion surrounding this chart, there was no evidence from which a jury could conclude that Sineneng-Smith did or did not represent to Galupo that he could obtain a green card. The only evidence that the government showed the jury was the chart itself, without any context. No reasonable jury could find beyond a reasonable doubt based on this ambiguous chart that Sineneng-Smith engaged in a scheme to defraud Galupo.

Taken together, the retainer agreement and chart fare no better. As both documents specially mention § 245(i), Sineneng-Smith may have highlighted the issue rather than concealed it. The government introduced no testimony concerning the meeting, nor did the jury have any context for how the defendant presented these two documents to Galupo.

Furthermore, even if a reasonable jury could accept beyond a reasonable doubt that the retainer agreement and the "Rocky and Frustrating Road" chart proved a scheme to defraud, the government could not prove that the falsehood was material. Without any testimony as to Galupo's motives for retaining Sineneng-Smith, the government presented no evidence that Galupo even intended to pursue a green card. Any conclusion that Galupo would not have reasonably retained Sineneng-Smith had he known that he was ineligible for legal permanent residency would have been based on pure speculation, much less evidence beyond a reasonable doubt. The evidence as to Galupo is clearly insufficient.

### 5. Summary: Mail Fraud Charges

In sum, the evidence presented at trial was sufficient as to Counts Five (Guillermo) and Six (Esteban), and insufficient as to the scheme to defraud and materiality elements of Count Four (Galupo). Therefore, the court grants the defendant's motion for judgment of acquittal as to Count Four, and denies it as to Counts Five and Six. Upon a similar review of the evidence, but without

construing the evidence in the light most favorable to the government, the court finds that failing to grant a new trial on Counts Five and Six would not result in "a serious miscarriage of justice," *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000), so the court accordingly denies Sineneng-Smith's Motion for a new trial as to Counts Five and Six. As to Count Four, the court conditionally grants Sineneng-Smith's motion for a new trial.

### C. Entrapment by Estoppel

Sineneng-Smith argues that the government is estopped from prosecuting her for the act of being hired to do immigration consultant work. But, as the court stated in addressing this same assertion in the defendant's motion to dismiss, Sineneng-Smith is not being prosecuted for the act of being hired to do immigration consultant work. "She is being prosecuted for allegedly entering into allegedly retainer agreements with illegal aliens, accepting payment from aliens and representing to aliens that her efforts would enable them to become legal permanent residents when she knew that they could not. That conduct, if proven, would be illegal under § 1324(a)(1)(A)(iv)**."** Dkt. No. 51 at 6.

### D. First Amendment Arguments

Sineneng-Smith contends that her conviction on the immigration charges violates her rights under the Petition Clause and Free Speech Clause of the First Amendment. The defendant makes the same arguments here—almost verbatim—as she made in her motion to dismiss. *See* Dkt. No. 46 at 20-25. For the same reasons as the court expressed in its order denying Sineneng-Smith's motion to dismiss, it rejects the defendant's contentions here. Dkt. No. 51 at 6.

### E. Objections to Evidence and Jury Instructions

#### 1. Scheme Evidence and Relevant Time Period

The court previously considered and rejected the defendant's arguments to exclude evidence of mail fraud based on a scheme mail fraud theory in its Rulings on Defendant's Motions *In Limine* I-IV. Dkt. No. 131. The court denied the defendant's motion in limine to exclude evidence based on a scheme mail fraud theory because Sineneng-Smith's arguments all rested on the erroneous premise that the scheme is not relevant to establish liability for the three specific counts charged. *Id.* at 1-3. The summary witnesses' testimony was relevant to the existence and scope of the charged

offenses, and the witnesses properly laid foundation for each of the summary charts introduced under Federal Rule of Evidence 1006. For the reasons stated here and those given in the order on the defendant's motions in limine, Sineneng-Smith is not entitled to a new trial based on the court's allowance of this evidence.

### 2. La Jolla Recording and Ramelb Testimony

The court also previously considered and rejected Sineneng-Smith's arguments as to the La Jolla recording and ICE Special Agent Ramelb testimony in its Rulings on Defendant's Motions *In Limine* I-IV. Dkt. No. 131. As Special Agent Ramelb sufficiently authenticated the recording in his testimony at trial, RT: 1097:5-6; 1098:17-24; 1099:1-4; 1100:23-25; 1101:19-21; 1102:11-20; 1103:1-11, and the defendant concedes that her arguments here are the same as in the motion in limine, the court concludes that Sineneng-Smith is not entitled to a new trial based on the court's allowance of this evidence.

### 3. Vicarious Liability Instruction

The court has previously denied the defendant's request for a vicarious liability instruction. The government did not rely upon a vicarious liability theory, and the evidence the government offered from Sineneng-Smith's employees was limited to conduct within the scope of the employees' agency as proscribed by Sineneng-Smith.

## III. ORDER

For the above stated reasons, the court grants defendant Evelyn Sineneng-Smith's motion for judgment of acquittal as to Counts One and Four. The motion for judgment of acquittal is denied as to Counts Two, Three, Five, and Six. The motion for a new trial is conditionally granted as to Counts One and Four, and denied as to Counts Two, Three, Five, and Six.

Dated: December 23, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge